IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


ANGELA R. LYONS,                    :

       Plaintiff,

    v.                                   Case No. 3:13-cv-120

                          :

POSTMASTER GENERAL
PATRICK R. DONAHOE,                 JUDGE WALTER H. RICE

       Defendant.                   :

---

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DOC. #19); GRANTING JUDGMENT AS A
MATTER OF LAW IN FAVOR OF DEFENDANT ON COUNT II
(DISABILITY DISCRIMINATION), COUNT V (RETALIATION THEORY)
AND COUNT IV (BREACH OF PUBLIC POLICY); DISMISSING
WITHOUT PREJUDICE COUNT I (RACIAL DISCRMINATION), COUNT
III (HOSTILE WORK ENVIRONMENT) AND COUNT V (WRONGFUL
TERMINATION THEORY) OF PLAINTIFF'S COMPLAINT (DOC. #1);
TERMINATION ENTRY

---

Plaintiff Angela Lyons ("Plaintiff" or "Lyons") brings this civil action against

her employer, Postmaster General Patrick R. Donahoe ("Defendant"), alleging

claims of racial discrimination, disability discrimination, hostile work environment,

breach of public policy, and retaliatory and wrongful termination.  The Court has

federal question jurisdiction pursuant to 28 U.S.C. § 1331.

      Pending before the Court is Defendant's Motion for Summary Judgment

(Doc. #19).  For the reasons set forth below, the motion is SUSTAINED.

## I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Lyons began working for the U.S. Postal Service ("Postal Service") in September, 1986.  Lyons Dep. at 7 (Doc. #21 at 2).  During the time relevant to her claims, Lyons worked at the Paul Laurence Dunbar Post Office in Dayton, Ohio. *Id.* at 8-9 (Doc. #21 at 2-3).

On June 4, 2012, Lyons filed an Equal Employment Opportunity ("EEO") discrimination complaint with the Postal Service, alleging that she had been discriminated against based on retaliation for her prior EEO activity and her alleged disability, which she attributed to a "permanent back injury."  Def. Ex. C (Doc. #21 at 21).  Lyons alleged that she was harassed for sitting on a stool at work, and that she received a 14-day suspension for attendance.  She stated that the harassment involving the stool occurred on January 26, 2012, and that the suspension had occurred on May 19, 2012.  The complaint was assigned the Agency Case No. 4C-450-0056012.

 On December 10, 2012, the U.S. Postal Service issued a Final Agency Decision ("FAD") addressing Lyons' complaint.  Def. Ex. D (Doc. #21 at 22).  The FAD also addressed a claim that Lyons suffered discrimination based on race, age, disability and retaliation for previous EEO activity on June 27, 2012, when she was not paid for sick leave that she had requested.[1]  *Id.*  The FAD found no

---

[1] As stated above, Lyons' June 2, 2012, EEO complaint only alleged retaliation and disability discrimination based on the stool controversy and the suspension.  The

2

evidence of discrimination to support any of Lyons's claims. *Id.* at 23 (Doc. #21 at 44). The FAD informed Lyons that she had 90 days from the decision date to bring her claims in a civil action in U.S. District Court. *Id.* at 45 (Doc. #21 at 45).

On January 22, 2013, through counsel, Lyons filed another EEO discrimination complaint with the U.S. Postal Service. Def. Ex. E (Doc. #21 at 47). The complaint alleged retaliation and disability discrimination based on the following incidents:

1) Lyons' supervisor, Mark Wilson, refused to allow her to use a stool on January 26, 2012, without documentation that a stool was a medically necessary accommodation. A white, female employee was allowed the use of a stool.

2) Without first being given progressive discipline, Lyons was issued a 14-day suspension on April 19, 2012.

3) Overtime was not distributed equitably among employees in March, April, May and June, 2012, with a specific incident on June 28 mentioned when a white male and a white female employee were given overtime.

---

FAD also addressed a discrimination claim based on denial of sick leave, but no complaint stating that claim is in the record. The Court infers that Lyons supplemented her June 2, 2012, complaint or filed another complaint, and that the agency consolidated these claims for purposes of its investigation and decision. The FAD also mentions (without describing) two additional allegations that "were dismissed for failure to state a claim" in a June 16, 2012, decision that it incorporates by reference, but neither that decision nor the allegations appear relevant to the claims in this action. Def. Ex. D (Doc. #21 at 22).

4) On September 28, 2012, Lyons was "pre-disciplined" by a supervisor, Scott Compton, who said that she should have come to work on June 27 and June 28, 2012. She had been off work on those days on doctor's orders because of "high blood pressure management."

Lyons' January 22, 2013, complaint was assigned Agency Case No. 4C-450-0005-13.

On February 8, 2013, the Postal Service issued a decision dismissing Lyons' January 22, 2013, complaint. Def. Ex. A (Doc. #21 at 12). The dismissal was given a formal filing date of January 22, 2013, the same date as the complaint. *Id.* Lyons' claims were dismissed for three reasons. First, she had previously stated claims regarding the January 26, 2012, stool incident and the April, 19, 2012, suspension, and those claims had been decided by the FAD in Case No. 4C-450-0056012.[2] *Id.* at 2 (Doc. #21 at 13). Second, the claim arising from the denial of overtime in March through June, 2012, was time barred, because Lyons had not contacted a counselor within the 45-day time frame required by 29 C.F.R. 1614.105(a)(1). *Id.* at 2-3 (Doc. #21 at 13-14). Third, Lyons' allegation that she

_____

[2] There is some confusion in the record regarding the date of the 14-day suspension. Lyons' initial complaint stated that the suspension occurred on May 19, 2012. Def. Ex. C (Doc. #21 at 21). Citing the record, the FAD addressing that complaint stated that Lyons "was issued a 14-Day Suspension dated April 11, 2012." Def. Ex. D at 14 (Doc. #21 at 35). In her second complaint, she stated that her claim arose from a 14-day suspension on April 19, 2012. Def. Ex. E (Doc. #21 at 48). As mentioned above, the dismissal decision determined that the FAD in Case No. 4C-450-0056012 had already addressed her claim based on the suspension. Lyons has not indicated that there was ever more than one suspension that formed the basis for this particular claim.

4

had been "pre-disciplined" for not working on June 27 and June 28, 2012, did not

constitute a claim by an "aggrieved person," as required to state a claim under the

regulations. *Id.* at 3-4 (Doc. #21 at 14-15). To be aggrieved, a complainant must

suffer an injury or harm that can be remedied, and under "every collective

bargaining agreement to which the Postal Service is a party . . .a discussion, is, by

definition, not disciplinary in nature." *Id.* Without any identifiable injury or harm,

or denial of any entitlement in relation to her employment, the decision found that

Lyons' claim of discrimination based only on a discussion with her supervisor failed

to state a claim. *Id.* The dismissal decision informed Lyons that she had 90 days

from the decision date to bring her claims in a civil action in U.S. District Court.

*Id.* at 45 (Doc. #21 at 16).

Lyons filed a five-count Complaint against Defendant on April 18, 2013.

Compl. (Doc. #1). She alleged that the Complaint was timely filed because of the

90-day right to sue letter filed on January 22, 2013. *Id.* at 1 (Doc. #1 at 1). The

factual allegations mirrored those of her January 22, 2013, EEO complaint, as

Lyons alleged the following:

1) She was not allowed to use a stool at work between January 27, 2012, and

September or October, 2012, but "a white female counterpart was allowed

to use her stool while working at the counter." *Id.* ¶ 7 (Doc. #1 at 2).

Lyons waited eight months before the "accommodation decision" was made

to allow her to use a stool at work. *Id.* ¶ 12 (Doc. #1 at 3).

5

2) She received a 14-day suspension on April 19, 2012, "for alleged attendance issues," in spite of the fact that she "had submitted documentation showing she was under medical care by a treating physician and had an excuse to miss work." *Id.* ¶ 8 (Doc. #1 at 2).

3) She did not receive any overtime between March, 2012, and June, 2012, while white co-workers did receive such overtime. *Id.* ¶ 9 (Doc. #1 at 3).

4) She received discipline in September, 2012, for absences on June 27 and 28, 2012, even though she had documentation from a physician for the absences. *Id.* ¶ 10 (Doc. #1 at 3).

Lyons also alleged that she had filed a grievance against Defendant after a "disciplinary layoff", won a monetary settlement and reinstatement as a result, and was subsequently "treated differently" at work. *Id.* ¶¶ 3-4 & 11 (Doc. #1 at 2-3).

Based on the foregoing allegations the Complaint stated five claims: Count I, entitled "Violation of Title VII Racial Discrimination," asserted that she was entitled to relief under 42 U.S.C. §§ 1981, 1983 and 2000, as well as Ohio Rev. Code § 4112.01; Count II, brought under the Americans with Disability Act ("ADA"), 42 U.S.C. §§ 12111-12117, asserted that Defendant had failed to provide accommodation for her disability by refusing to allow her to use a stool while working at the counter; Count III alleged that she had been subjected to a hostile work environment, in violation of federal and state law; Count IV, entitled "Breach of Public Policy," stated that her allegations demonstrated that the Postal

6

Service had breached its employment policies; and Count V, entitled

"Retaliation/Wrongful Termination" alleged that her termination was because of her

race, disability, and in retaliation for her EEO complaints, and that she was entitled

to relief under 42 U.S.C. §§ 1981, 1983 and 2000, as well as Ohio Rev. Code

§ 4112.01. *Id.* ¶¶ 15-39 (Doc. #1 at 4-7). In her prayer for relief, Lyons sought a

declaration that her rights had been violated, injunctive relief to prevent future

misconduct, compensatory damages, punitive damages, damages for pain and

suffering, and costs and attorneys' fees. Doc. #1 at 8.[3]

On October 23, 2014, Defendant filed a Motion for Summary Judgment.

Doc. #19. Therein, Defendant argued that 1) Lyons had forfeited her claims

involving the alleged denial of the use of the stool and the 14-day suspension

because she did not timely appeal or file suit following the issuance of the FAD

that addressed them; 2) Lyons' claim based on denied overtime should be

dismissed because she admitted during her deposition that she did not contact an

EEO counselor about the claim within 45 days of its occurrence, and instead

waited until October 10, 2012, over 100 days after the last date of her allegation;

3) her claim of being disciplined in September, 2012, should be dismissed because

it is based only on having had a discussion with her supervisor about not coming to

_____

[3] Lyons filed a second action against Defendant in this Court on January 21, 2014, stating the same five claims for relief, but they appear to be based on different factual circumstances. *See* Doc. #1, Case No. 3:14-cv-21. In the later-filed case, Lyons alleges that her claims were exhausted by a FAD issued by the Postal Service on October 31, 2014, but that decision is not in the record.

work on two days in June, 2012, which is not an adverse employment action; 4) she cannot establish prima facie cases of disability or retaliation discrimination; 5) her claim under the ADA fails because only claims under Title VII and the Rehabilitation Act of 1973 are cognizable against the Postal Service; 6) the claims of hostile work environment, retaliation/wrongful termination, and race discrimination were not administratively exhausted prior to filing suit in federal court; 7) as a matter of law, the Postal Service is not subject to punitive damage awards under Title VII.

On November 12, 2014, Lyons' counsel filed a Motion for an Extension of Time to Respond to Defendant's Motion for Summary Judgment, requesting an additional two weeks of response time, which the Court granted. Doc. #23. In spite of this extension, no Response has been filed by Lyons or her counsel.

## II.    STANDARD OF REVIEW - MOTION FOR SUMMARY JUDGMENT

When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has demonstrated that no disputed issue of material fact exists, the burden

8

shifts to the nonmoving party to present evidence of a genuine dispute of a material fact that is resolvable only by a jury. *Celotex*, 477 U.S. at 324. The nonmovant must "cit[e] to particular parts of materials in the record" to demonstrate the existence of a genuine dispute of material fact, or otherwise "show[] that the materials cited" by the moving party do not demonstrate that no disputed issue of material fact exists. Fed. R. Civ. P. 56(c)(1).

It is not sufficient for the nonmoving party to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must "go beyond the pleadings" and present some type of evidentiary material that demonstrates the existence of a genuine dispute. *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

When ruling on a motion for summary judgment, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A court must avoid "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts," as such are "jury functions" that are inappropriate to employ at the summary judgment stage. *Id*.

9

A nonmovant's failure to respond to a motion for summary judgment does not, in itself, entitle the movant to judgment as a matter of law. *Adickes*, 398 U.S. at 161; *see also Carver v. Bunch*, 946 F.2d 451, 455 (citing *Adickes* and explaining that "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded"); Fed. R. Civ. P. 56(e) advisory committee's note (2010) (stating that "summary judgment cannot be granted by default even if there is a complete failure to respond to the motion"). Instead, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged th[e] burden" required by Fed. R. Civ. P. 56(a). *Carver*, 946 F.2d at 455. When the nonmovant "fails to properly address another party's assertion of fact," Rule 56(e) allows the Court to: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or (4) issue any other appropriate order.

Typically, a non-movant's failure to file a Response to a Motion for Summary Judgment would prompt the Court to issue an order to respond, so as to "give an opportunity to properly support or address the fact[s]" that the movant asserts are undisputed. Fed. R. Civ. P. 56(e)(1). Here, however, Plaintiff's counsel filed a Motion for an Extension of Time to Respond to Defendant's Motion for Summary Judgment, an unambiguous indication that Plaintiff's counsel was aware of the

10

pending Motion for Summary Judgment. The Court interprets the subsequent failure to file a Response as an indication that, after reflection, given the fact that more than two and a half months have elapsed since the Court granted the extension, Plaintiff ultimately considered a Response unnecessary. Accordingly, the Court will consider Defendant's arguments and the record without the benefit of Plaintiff's Response, at the same time mindful of Defendant's ultimate burden under Fed. R. Civ. P. 56(a) to show both that there is no genuine dispute as to any material fact, and that he is entitled to judgment as a matter of law.

## III.   ANALYSIS

Defendant first argues that Lyons is precluded from bringing any discrimination claim based on the alleged denial of the use of the stool and the 14-day suspension because she did not timely appeal or file suit following the issuance of the FAD that addressed those issues. Doc. #19 at 3.

The Equal Employment Opportunity Act of 1972 amended Title VII to extend workplace discrimination protection to federal employees, including Postal Service employees. The applicable Title VII provision states that "[a]ll personnel actions affecting employees . . . in the United States Postal Service . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). The Rehabilitation Act of 1973 provides Postal Service employees with a remedy for claims of disability discrimination. 29 U.S.C. § 794(a). A federal employee seeking relief under Title VII or the Rehabilitation

11

Act must exhaust the available administrative remedies before filing suit in district court. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 823 (1976); *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) (applying exhaustion requirement to a Title VII claim); *Taylor v. Donahoe*, 452 F. App'x 614 (6th Cir. 2011) (upholding dismissal of Title VII and Rehabilitation Act claims because postal employee plaintiff failed to administratively exhaust them). After an adverse decision or appeal, the employee may file suit in federal district court, but must do so "[w]ithin 90 days of receipt of notice of final action taken by" the Postal Service or the Equal Employment Opportunity Commission ("EEOC"). 42 U.S.C. § 2000e-16(c); 29 U.S.C. § 794a(a)(1) (stating that the same "remedies, procedures, and rights set forth" in 42 U.S.C. § 2000e-16 apply to claims under the Rehabilitation Act); *see also* 29 C.F.R. § 1614.110(b) (requiring that any notice of final action "contain notice of the right to appeal [and] the right to file a civil action in federal district court . . . and the applicable time limits for appeals and lawsuits").

Here, the undisputed evidence in the record demonstrates that Lyons has untimely stated claims based on the denial of the use of the stool and her allegedly unmerited 14-day suspension. Both issues were addressed by the December, 2012, FAD in Case No. 4C-450-0056012. Def. Ex. D (Doc. #21 at 22). During her deposition, Lyons admitted that she would have had to file a civil action based on the issues addressed by the December, 2012, FAD by sometime in March,

12

2013. Lyons Dep. at 23 (Doc. #21 at 6). She also admitted that the Postal

Service dismissed her attempts to restate those claims in her January, 2013,

complaint because they had been previously resolved.[4] *Id*. at 26 (Doc. #21 at 7).

Lyons filed her Complaint on, April 18, 2013, over a month after the 90-day

deadline provided by 42 U.S.C. § 2000e-16(c) for filing a civil action based on the

claims addressed by the December, 2012 FAD. Accordingly, to the extent that

any of Lyons' claims arise from the stool incident or the 14-day suspension, they

are time-barred, and must be dismissed. Her claim of disability discrimination, as

stated in Count II, relies entirely on the denial of the use of a stool to allege a

failure to accommodate, and is therefore dismissed with prejudice.[5]

   Defendant also argues that Lyons' claim based on denial of overtime from

March, 2012, through June, 2012, is also time barred because she did not contact

_____

[4] The deposition testimony refers to a December 12, 2012 filing date of the FAD in Case No. 4C-450-0056012, while the document itself is dated December 10, 2012. *Compare* Lyons Dep. at 25-26 (Doc. #21 at 7) *with* Def. Ex. D at 24 (Doc. #21 at 45). The discrepancy may be due to the date that Lyons received actual notice of the decision versus its filing date. However, the discrepancy is not material. Based on either date, the Complaint was filed well over a month after the 90-day deadline.

[5] Lyons stated her disability discrimination claim under the ADA, but the statute does not provide a claim for relief for a postal employee because United States is excluded from the statute's definition of "employer." 42 U.S.C. § 12111(5)(B)(i). Because "[t]he Rehabilitation Act is a federal employee's exclusive remedy for employment related discrimination based on a disability," the Court construes Lyons' ADA claim as one brought under the Rehabilitation Act. *Plautz v. Potter*, 156 F. App'x 812, 815-16 (6th Cir. 2005) (construing postal employee's ADA claim as one brought under the Rehabilitation Act).

an EEO counselor within the 45 days required by 29 C.F.R. § 1614.105(a)(1). The Postal Service dismissed the denial of overtime claim for this reason. Def. Ex. A at 2-3 (Doc. #21 at 13-14).

Under 29 U.S.C. § 1614.105(a)(1), an employee "must initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." The 45-day period "is construed as a statute of limitations" for a Postal Service employee bringing a discrimination claim. *Johnson v. Runyon*, 47 F.3d 911, 917 (7th Cir. 1995). Thus, an employee's failure to contact an EEO counselor within the 45-day period "is cause for dismissal of the complaint by the agency . . . as well as by the district court." *Steiner v. Henderson*, 354 F.3d 432, 435 (6th Cir. 2003). Here, the undisputed evidence shows that any discrimination claim arising from an alleged denial of overtime is time barred. Defendant points to Lyons' deposition admission that she did not contact an EEO counselor about being denied overtime until October 10, 2012. Lyons only makes the general allegation that she was denied overtime from March through June, 2012. Even if she had been denied overtime on June 30, 2012, however, she would have had to contact an EEO counselor by August 13, 2012. She waited until nearly two months later before doing so, and the Postal Service justifiably dismissed her claim as time-barred. The Court must do the same. *Steiner v. Henderson*, 354 F.3d at 435. Accordingly, any of the claims stated in the Complaint that rely on Lyons'

14

allegations of discriminatory assignment of overtime between March, 2012, and June, 2012, are dismissed with prejudice.

Defendant's third and fourth arguments posit that Lyons' allegation of being "pre-disciplined" on September 20, 2012, when a supervisor told her that she should not have been absent on two days in June, 2012, fails to describe any adverse action that could form the basis for a prima facie discrimination claim based on retaliation.  Doc. #19 at 5-7.

A prima facie case retaliation under Title VII requires the plaintiff to demonstrate the following elements:

> (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).  The Supreme Court has stated that "Title VII's anti[-]retaliation provision must be construed to cover a broad range of employer conduct."  *Thompson v. North Am. Stainless, LP*, 131 S.Ct. 863, 868 (2011).  For this reason, the basis for a retaliation claim "is not limited to discriminatory actions that affect the terms and conditions of employment."  *Id.* (quoting *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 66 (2006)).  Instead, a claim may arise from "any employer action that 'well might have dissuaded a reasonable worker from making or supporting a

charge of discrimination.'" *Id.* (quoting *Burlington*, 548 U.S. at 68); *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007).

According to Lyons, her claim is entirely based on having had a discussion with her supervisor on September 20, 2012, about why she didn't come to work for two days in the previous June. Lyons Dep. at 33-34 (Doc. #21 at 9). She admitted that she was not disciplined as a result of the conversation, and that no term, condition, or privilege of her employment was affected by the conversation. *Id.* Although the "relatively low bar" of the *Burlington* standard does not require an adverse action to impact a term or condition of employment in a Title VII retaliation claim, *Michael*, 496 F.3d at 596, no reasonable jury could conclude that Lyons' discussion with her supervisor would dissuade a reasonable worker from engaging in protected activity. In spite of describing the conversation as an instance of "pre-discipline," no discipline occurred afterwards, and Lyons provided no testimony about the effect that the discussion had on her. Lyons Dep. at 34 (Doc. #21 at 9). Instead, she admitted that substance of her complaint is that fact that the discussion occurred at all. *Id.* Even if the Court draws the interference in Lyons' favor that the discussion was unappreciated or unpleasant, no reasonable jury could conclude that this single instance of a supervisor expressing disapproval of two days' absence would dissuade a reasonable person from engaging in protected Title VII activity. *See Burlington*, 548 U.S. at 68 ("petty slights, minor annoyances, and simple lack of good manners will not create such deterrence").

16

Defendants have, therefore, demonstrated that this allegation fails to demonstrate the prima facie element of an adverse employment action required to state a retaliation claim. Accordingly, to the extent Count V of Lyons' Complaint, entitled "Retaliation/Wrongful Termination," is based on a claim of retaliation arising from her September 20, 2012 discussion with a supervisor, it is dismissed with prejudice.

Furthermore, to the extent that Count V is based on any alleged termination, it must also be dismissed. The only termination mentioned in the Complaint concerns an alleged "disciplinary layoff on April 28, 2011." Compl. ¶ 3 (Doc. #1 at 2). According to Lyons, she filed a grievance after the layoff, and subsequently "won a monetary settlement as well as had her record cleared to show she was not laid off and could retain her benefits." *Id.* ¶ 4 (Doc. #1 at 2). If this is the termination referred to in Count V, which is captioned "Retaliation/Wrongful Termination," then, based on her own allegations of continued employment, the Postal Service remedied the injury by compensating her and reinstating her. However, if another termination prompted this claim, there is no record of it in the EEO complaints or administrative decisions before the Court. Furthermore, Lyons testified at her deposition that she is still employed by the Postal Service, and that this case does not involve a claim that she was terminated from her job. Lyons Dep. at 7, 35 (Doc. #21 at 2, 9). Thus, the mention of a termination is either a pleading error or, as Defendant argues, an unexhausted claim in the pre-litigation

17

administrative pipeline. Doc. #19 at 9-12. In either case, to the extent Count V, "Retaliation/Wrongful Termination," is based on a claim of termination, it must be dismissed without prejudice.

Defendant also argues that Count I, captioned "Violation of Title VII Racial Discrimination," and Count III, captioned "Hostile Work Environment," are also unexhausted claims that should be dismissed. A review of the EEO decision that forms the basis for this action and Lyons' initial EEO complaint reveals that the only exhausted claims before the Court are based on disability discrimination and retaliation. Def. Ex. A (Doc. #21 at 12); Def. Ex. E (Doc. #21 at 47). The December, 2012, FAD in Case No. 4C-450-0056012 mentioned a claims of race discrimination, but, as discussed, Lyons did not timely file suit based on that FAD. Def. Ex. D (Doc. #21 at 22). As with Lyons' claim of wrongful termination, however, there may be claims of race and hostile work environment that are still in the process of being exhausted, warranting their dismissal herein without prejudice.[6]

Lyons' claims for relief under 42 U.S.C. §§ 1981 and 1983, Ohio Rev. Code § 4112.01, and Count IV of her Complaint, entitled "Breach of Public Policy," should also be dismissed, Defendant argues, because they are not available forms

---

[6] Since the filing of this action, these claims may have been exhausted by the October 31, 2013, FAD that is referred to in the Complaint of Lyons' other pending civil action against Defendant. Doc. #1, Case No. 3:14-cv-21. If so, they are properly addressed in that action, which was filed after the issuance of that FAD, and not in this case. *See supra*, footnote 3.

18

of relief to federal employees. The Complaint alleges in Count I, entitled "Violation of Title VII Racial Discrimination," that Lyons is entitled to relief under 42 U.S.C. §§ 1981, 1983 and 2000, as well as Ohio Rev. Code § 4112.01. Doc. #1 at 4. Count IV of her Complaint alleges that she is entitled to damages because the Postal Service breached its nondiscrimination policies, but does not identify a source of law for the claim. *Id.* at 6. However, Title VII or the Rehabilitation Act are the exclusive means for Lyons to pursue her claims of discrimination. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820 (1976); *Briggs v. Potter*, 463 F.3d 507 (6th Cir. 2006) (holding that postal employee's discrimination claim brought under § 1981 fails as a matter of law and stating that "[f]ederal employees must rely upon Title VII and other federal anti[-]discrimination statutes . . . that apply to the federal government as the exclusive remedy for combating illegal job discrimination"); *Wallace v. Henderson*, 138 F. Supp. 2d 980, 982-83 (S.D. Ohio 2000) (dismissing postal employee's discrimination claim brought under Ohio Rev. Code § 4112.01, "due to the exclusivity of Title VII" as a remedy). Accordingly, to the extent that Count I and Count IV attempt to state discrimination claims not based on Title VII or the Rehabilitation Act, they are dismissed with prejudice.

Finally, Defendant moves the Court to have Lyons' prayers for punitive damages stricken from the Complaint, arguing that the Postal Service is exempt from discrimination claims that award punitive damages. This request is largely mooted by the fact that the Court has dismissed all of Lyons' claims, so there is no

19

remaining basis for awarding damages of any type in this case. However, because Lyons may have unexhausted discrimination claims that she wishes to litigate in a future action, the Court feels compelled to point out that she may not seek punitive damages for those claims under Title VII. 42 U.S.C. § 1981a(b)(1) (exempting "a government, government agency or political subdivision" from punitive damages under Title VII); *Robinson v. Runyon*, 149 F.3d 507, 516 (6th Cir. 1998) (holding that the "government agency" exemption to Title VII punitive damage awards set forth under 42 U.S.C. § 1981a(b)(1) applies to the Postal Service).

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion for Summary Judgment (Doc. #19) is SUSTAINED. To summarize:

Count I, "Violation of Title VII Racial Discrimination," and Count III, "Hostile Work Environment," are DISMISSED WITHOUT PREJUDICE, in the event that such unexhausted claims have not yet been presented to the Court;

Because she did not file a civil action within 90 days of the Final Agency Decision that dismissed her claims arising from the denial of the use of the stool in the workplace or her 14-day suspensions, they are time-barred, and, therefore, DISMISSED WITH PREJUDICE;

Count II, stated under the ADA but construed under the Rehabilitation Act, relies entirely on the alleged denial of the use of a stool to state a claim for a failure to accommodate, and is, therefore, DISMISSED WITH PREJUDICE;

Any claims based on allegations of discriminatory assignment of overtime between March, 2012, and June, 2012, are DISMISSED WITH PREJUDICE, because the undisputed evidence shows that Lyons did not contact an EEO counselor about the issue within the 45 days required by 29 C.F.R. § 1614.105(a)(1);

To the extent that Count V, "Retaliation/Wrongful Termination," is based on a claim of retaliation arising from Lyons' September 20, 2012, discussion with a supervisor, it is DISMISSED WITH PREJUDICE, because no reasonable jury could conclude that the discussion in question would dissuade a reasonable employee from reporting protected activity; however, to the extent that the claim is based on an unexhausted claim of wrongful termination, it is DISMISSED WITHOUT PREJUDICE;

Count IV, "Breach of Public Policy," and any attempts at stating discrimination claims against the Postal Service under 42 U.S.C. §§ 1981 and 1983 and Ohio Rev. Code § 4112.01 are not cognizable as a matter of law, and are, therefore, DISMISSED WITH PREJUDICE.

Thus, Count I (Racial Discrimination), Count III (Hostile Work Environment), and Count V (Wrongful Termination Theory) are DISMISSED WITHOUT

PREJUDICE. Judgment will be entered in favor of Defendant and against Plaintiff on Count II (Disability Discrimination), Count V (Retaliation Theory) Count IV (Breach of Public Policy).

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: February 2, 2015

WALTER H. RICE
UNITED STATES DISTRICT JUDGE